UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZUBIN NAGPAL,<br><br>*Plaintiff*,<br><br>-against-<br><br>ASHWIN DESHMUKH, FADED RAINBOW LLC, NONPLUSSED LEGERDEMAIN LLC d/b/a Superiority Burger, and JOHN or JANE DOES,<br><br>*Defendants*. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff Zubin Nagpal ("**Plaintiff**"), by his attorneys McCue Sussmane Zapfel & Cohen P.C., alleges as follows as and for his complaint against defendants Ashwin Deshmukh ("**Defendant**"), Faded Rainbow LLC ("**Defendant Company**" and, together with Defendant, referred to as "**Defendants**"), Nonplussed Legerdemain LLC ("**Operating Company**"), and other to-be-named owners, operators, affiliates, subsidiaries and/or transferees of Defendants and the business known as "Superiority Burger" (collectively, "**Doe Defendants**").

## NATURE OF ACTION

1. This Action is commenced by Plaintiff in this Court against Defendant, his related operating entity (Defendant Company), the entity through which the restaurant business known as "Superiority Burger" is operated (Operating Company), and other to-be-named operators and affiliates of that business (Doe Defendants) for fraud and other wrongdoing against Plaintiff in connection with a 2022 lending transaction, with causes of action including breach of contract, fraud, unjust enrichment, declaratory relief and other related relief.

## PARTIES

2. Plaintiff is an individual who currently resides in Austin, Texas, and is presently a

citizen of the State of Texas.

3. Upon information and belief, Defendant is a natural person domiciled in New York, New York, and a citizen of the State of New York, with a residence located at 228 East 5th Street, New York, New York 10003 and a place of business located at 119 Avenue A, New York, New York 10009.

4. Upon information and belief, Defendant Company is a New York limited liability company with its principal place of business located at 119 Avenue A, New York, New York 10009, and is the parent company and management company of, and the holder of the intellectual property associated with, the restaurant business known as "Superiority Burger."

5. Upon information and belief, no member of Defendant Company is or was at any relevant time a citizen of the State of Texas; the members of Defendant Company are individuals domiciled in the State of New York and/or trusts administered by trustees domiciled in the State of New York.

6. Upon information and belief, Operating Company is a New York limited liability company with its principal place of business located at 119 Avenue A, New York, New York 10009, which operates the restaurant business known as "Superiority Burger" at that location, and of which Defendant Company is the majority member. Upon information and belief, no member of Operating Company is or was at any relevant time a citizen of the State of Texas.

**JURISDICTION AND VENUE**

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties – Plaintiff is presently a citizen of Texas; Defendant is a citizen of New York; and each of Defendant Company and Operating Company is a limited liability company no member of which is a citizen of Texas, each of their members being, upon information and belief, a citizen of New York; and, upon information and belief, no Doe

Defendant is a citizen of the State of Texas – and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, in that Plaintiff seeks recovery of not less than the $175,000 delivered under the Transaction defined below, together with additional damages. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all of the defendants reside in the State of New York and at least one of them resides in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

8. As noted above, Plaintiff commences this Action against Defendants in connection with a lending transaction (the "**Transaction**") which they induced Plaintiff to enter into in 2022 under which Plaintiff provided them with a "bridge loan" of $175,000 for the ostensible purpose of paying certain operating expenses of the growing restaurant business of Defendant Company and Operating Company known as "Superiority Burger" (the "**Defendant Business**") in exchange for repayment of the loan with interest and a grant of equity in Defendant Company and its purported business.

### I. The Relationships Between the Parties

9. Plaintiff is a business person.

10. Defendant is a local restaurant and nightlife impresario who holds himself out to the public as the owner and operator of several successful restaurant businesses in New York City including the Defendant Business.

11. Prior to the Transaction in 2022, Defendant and Plaintiff knew each other both socially and professionally, having been introduced in or about early 2019 in connection with Defendant's solicitation of a separate investment by Plaintiff in another restaurant venture operated by Defendant and his affiliates, and having thereafter developed a relationship of trust and

confidence through their ongoing social, professional and investment dealings over the three years preceding the Transaction.

12. During all relevant periods leading up to the transaction (and after), Defendant held Defendant Company out as the owner and parent company of the Defendant Business – a successful and profitable restaurant business with its original location at 430 East 9th Street, New York, New York and plans to expand the business to a new flagship location at 119 Avenue A, New York, New York ("**NY Location**").

13. At all times prior to the Transaction with Plaintiff in 2022 (and thereafter), Defendant held himself out to Plaintiff as managing member and authorized representative of Defendant Company and the Defendant Business with full executive authority to act on its behalf.

## II. The Inducement of Plaintiff to Enter into the Transaction with Defendants

14. In the weeks leading up to the Transaction in and around 2022, Defendant communicated with Plaintiff regarding the Defendant Business, holding himself out to Plaintiff as the managing partner of Defendant Company - with control over its operations and all necessary authority to act on its behalf as well as a majority equity interest in the company including an unrestricted equity stake of not less than 25% – stating in his written solicitation of January 18, 2022 that he owned 25% of Defendant Company and that the loan would be "collateralized against my entire interest in SB [Superiority Burger] (which I own directly and solely)."

15. In this context, Defendant represented to Plaintiff that Defendant Company was experiencing a temporary, one-time lack of liquidity due to unanticipated expenses that arose in connection with the improvement of the NY Location of the Defendant Business – specifically referencing HVAC repairs and other improvements to the premises, and pressing in his written solicitation of January 18, 2022 for a close "today/tomorrow" so that he could "pull the HVAC before lead times explode."

16. In the course of negotiating the Transaction, and in writing, the parties addressed the structure of the consideration directly: Plaintiff proposed repayment of $150,000 on the $145,000 advanced, offered in the alternative to "take a small yield on the debt instead of the equity juice," and proposed a rate of interest and a defined default period; Defendant elected to proceed with the equity component and confirmed the terms, stating on January 19, 2022: "Sent the doc. Equity was easier, collateral is the entire interest, default is 5 days grace beyond the 30 day window." The Equity Interest was accordingly bargained-for consideration for the loan, and not a gratuity.

17. In this context, Defendant solicited Plaintiff to provide a short-term bridge loan of $175,000 to fund payment of the subject improvements to the NY Location – payable by Defendant Company within just thirty (30) days of the making of the loan – when he indicated that Defendant Company was scheduled to receive additional funding from existing financing sources already secured by the company.

18. In this context, Defendant represented to Plaintiff that the requested bridge loan was the only additional funding that Defendant Company required to complete improvements to the NY Location necessary to obtain payment under existing investor financing arrangements which would then be immediately available to repay the proposed bridge loan from Plaintiff.

19. As part of the transaction, Defendant represented to Plaintiff that he would receive an equity interest in Defendant Company as part of the consideration granted under the transaction which he, himself and as the managing executive of Defendant Company, was authorized to provide under all existing agreements.

20. Additionally, as part of the transaction, Defendant offered to provide Plaintiff with other additional security to further secure the loan provided by Plaintiff under the transaction including, *inter alia*: (i) a promissory note from him personally to secure the repayment of the

amounts provided by Plaintiff; and (ii) a security interest in his personal interest in the Defendant Company represented as 25% of the total equity.

21. In this context, Plaintiff made various inquiries with Defendant himself and as managing executive of the Defendant Company regarding the operations, finances and activities of the Defendant Company, its business and Defendant himself to assess the transaction, the creditworthiness of the borrowers, and the suitability of its terms.

22. In this context, Defendant represented to Plaintiff that he and Defendant Company were solvent, paying their existing obligations as they came due, did not have any material liabilities beyond the obligations incurred under the proposed transactions with Plaintiff, and that the loan was merely sought to fund the referenced unforeseen improvements of the NY Location.

23. In this context, Defendant emphasized to Plaintiff that the loan transaction was uniquely beneficial to him, delivering not only the immediate return of funds loaned with interest, but also a highly-valuable equity interest in the Defendant Company, born solely from the one-time need of the Defendant Company for short-term liquidity due to the unforeseen and unforeseeable renovation expenses for the NY Location.

24. In this context, Defendant made other additional representations regarding the Defendant Company, its status and ongoing business activities to further underscore the security of the loan and value of the equity interest offered under the transaction, including, *inter alia*: (i) that Defendant then held cash on hand of $833,127.84 – a representation made in a writing dated January 18, 2022 and accompanied by a purported account screenshot; (ii) that Defendant had acquired his interest in Defendant Company at a $3 million valuation and that any future capital raise at the holding-company level would occur at a “step up” of “at least 3-5x” from that valuation; (iii) that Defendant Company owned a 58% stake in the new restaurant plus a management fee, a 25% stake in a Tokyo location plus a royalty, 100% of the “Superiority Burger” trademark and

related intellectual property, and a $350,000 note receivable from the new restaurant; (iv) that Defendant Company was "over-allocated" on its capital raise and merely "waiting for final closes" from committed investors, as stated in the same writing of January 18, 2022; and (v) that the goal of Defendant Company was to use the success of the restaurant to build a consumer packaged goods product line on the models of "Rao's" and "Hu Kitchen," in addition to opening additional restaurant locations – further underscoring the represented value of the equity offered.

25. Defendant repeated and reinforced these representations of financial capacity after the Transaction closed. On or about March 20, 2022, after the Principal Amount had matured unpaid, Defendant transmitted to Plaintiff a screenshot of a Bank of America business banking account in the name of Operating Company – the entity through which Defendant Company operates the Defendant Business – reflecting a balance of $620,581.71, together with the statement that "this is the cash on hand with equipment and deposits paid for, so if they don't close ASAP I can fund the repayment." By that communication Defendant confirmed, as an officer and manager of Defendant Company and the Defendant Business with access to and control over its accounts, that the Defendant Business held funds sufficient to repay Plaintiff. Defendants nonetheless did not fund the repayment.

26. In reliance upon these representations of Defendant himself and on behalf of Defendant Company as well as their other ongoing representations, Plaintiff agreed to enter into the Transaction with Defendants and delivered to them the total sum of $175,000 (the "**Loan Amount**") which was structured, per the terms proposed by Defendant in his January 18, 2022 writing, as: (i) a loan in a principal amount of $145,000 (the "**Principal Amount**") to be repaid within thirty (30) days with interest of 3% *per annum*; and (ii) a payment of $30,000 for the purchase of a 1% equity interest in Defendant Company, together with an additional 0.25% equity interest granted as further consideration for the loan – for a total equity interest of 1.25% in

Defendant Company (the "**Equity Interest**").

27. In connection with the Transaction, Defendant delivered documents to Plaintiff as well as other communications memorializing the terms of the agreement (collectively, the "**Loan Documents**") which included: (i) a loan agreement with Defendants dated January 20, 2022 (the "**Loan Agreement**") which was executed by Defendant himself and as "managing partner" of Defendant Company and which Defendant re-delivered to Plaintiff in corrected and executed form on January 20, 2022 with the statement "Error fixed, reattached for your signature"; and (ii) a promissory note dated January 19, 2022 made by Defendant only in favor Plaintiff (the "**Promissory Note**").

28. Relevant here, the Loan Documents delivered to Plaintiff by Defendant himself and on behalf of Defendant Company included, *inter alia*: (i) specific representations as to the basis for the loan and utilization of its proceeds for "capital construction projects related to its new location at 119 Avenue A, before the final tranche of committed investor funds close" [Loan Ag., p. 1]; (ii) specific identification of Defendant Company as "the parent company of Superiority Burger, it's management company and holder of its intellectual property" [Promissory Note, ¶ 2]; and (iii) specific identification of Defendant as holder of an "undiluted 25% of the overall Company" representing his "personal stake" in the company [Loan Ag., ¶ 3.1.2].

29. Further, the Loan Documents also established other relevant terms for the benefit of Plaintiff including, *inter alia*: (i) provision for repayment of the Principal Amount to Plaintiff within 30 days from the date of the Loan Agreement [*see* Loan Ag., ¶ 2.1]; (ii) delivery of a 1.25% stake in Defendant Company to Plaintiff [*see, e.g.*, *id.*, ¶ 2.2]; (iii) delivery of a security interest in the "entire personal stake" of Defendant in Defendant Company to Plaintiff [*see* Loan Ag., ¶ 3]; (iv) payment of interest at a rate of 3% per annum under the note on the Principal Amount [Promissory Note, ¶ 2]; (v) payment of legal fees to Plaintiff enforcing the note [*id.*, ¶ 4]; and (vi)

obligations to deliver documentation with respect to the equity interest granted to Plaintiff in Defendant Company including the capitalization table [*id*., ¶ 6].

30. At the closing of the Transaction, Plaintiff requested in writing that Defendant provide the ownership assignment documents for the Equity Interest as well as the agreements among the relevant entities, and Defendant represented in writing in response, *inter alia*, that he had "subscribed in to the entity (faded rainbow) personally," that the operating agreement of Defendant Company was to be restructured, and that he would assign ownership to Plaintiff before the opening of the new restaurant.

31. Notwithstanding these representations, no assignment or documentation of the Equity Interest was ever delivered to Plaintiff – whether before the opening of the NY Location in 2023 or at any time thereafter.

## III. <u>The Defaults of Defendants in the Transaction and Related Wrongdoing</u>

32. After Plaintiff entered into the Transaction and delivered the Loan Amount to Defendants, Defendants failed to deliver any counter-performance under the Transaction in the agreed-upon time frames – or ever.

33. First, Defendants defaulted in payment of the Principal Amount to Plaintiff within thirty (30) days as required under the Loan Documents, and have failed to pay the Principal Amount or the interest accrued thereon at any time thereafter, except for a single partial payment of $5,500 made by wire on or about March 13, 2024 from an account in the name of Tiny Capital, LLC – an entity which, according to the pleadings of Defendant Company in the related litigation described below, is solely owned by Defendant – on account of the balance acknowledged by Defendant, notwithstanding Plaintiff's ongoing demands and notices of default.

34. In addition, Defendants failed to deliver the Equity Interest in the Defendant Company to Plaintiff as required under the Loan Documents or the other materials required in

connection with the equity granted to Plaintiff under the transaction such as capitalization tables.

35. In the periods that followed, Defendant explained the non-performance of Defendants under the Transaction as resulting from various short-term events beyond their control, including, *inter alia*: that a Los Angeles investor scheduled to close had been "way slower than was promised"; that construction and buildout of the NY Location were continuing; that repayment would be funded from his family; and that he would "set up wires and paperwork" in short order.

36. Notably, in and after the latter half of 2022, Defendant repeatedly promised payment on dates certain and failed to perform: on June 29, 2022 he stated that he was "thinking 50% next week and a close out before the end of July" and would "set up wires and paperwork this week"; on July 5, 2022 he confirmed payment would issue "by Thursday"; and on July 8, 2022 he stated that the funds were "coming from my family account" and would represent "[h]alf the principal." No wire was ever received, and on July 12, 16 and 17 and August 7, 11 and 13, 2022 Plaintiff advised Defendant in writing that no payment had arrived and demanded an explanation.

37. Further, in 2023 and 2024 Defendant continued to acknowledge the obligation and to propose terms for its satisfaction, including a proposed rate of interest of 10% per annum, and thereafter accepted Plaintiff's proposal of interest at 12.5% per annum running from January 20, 2023.

38. Although unknown to Plaintiff at the time, the intent and effect of these statements by Defendant himself and on behalf of Defendant Company was to, *inter alia*: (i) conceal the competing claims of other lenders and investors against Defendant and the Defendant Business, and other broader financial wrongdoing of Defendant himself and through Defendant Company; and (ii) induce Plaintiff to avoid exercising his default remedies under the Transaction or otherwise taking remedial action to protect his interests and property (including his equity interest in Defendant Company and the Defendant Business as well as his security interest in the equity of

Defendant) to his severe and ongoing detriment.

39. As delays in performance continued, on or about April 5, 2022, Defendant expressly acknowledged that the Transaction had granted Plaintiff a 1.25% interest in Defendant Company and agreed to modify the Transaction to provide additional consideration to Plaintiff consisting of a further 0.25% equity interest, increasing the Equity Interest to 1.5% in the aggregate (the "**Modification**").

40. Further, between 2022 and 2024, Defendant continued to make these representations and others to Plaintiff regarding the nature of the delays and non-performance with the intent and effect of inducing Plaintiff to avoid exercising his default remedies.

41. In reliance on the representations of Defendant himself and on behalf of Defendant Company, Plaintiff avoided exercising his default remedies under the Transaction and taking other remedial actions to enforce his rights against Defendants and protect his interests including but not limited to recovery of required payments under the Transaction and execution on the security interest held by Plaintiff in the property of Defendant.

42. On or about March 13, 2024, Defendant himself calculated and acknowledged in writing the balance then due and owing to Plaintiff under the Transaction as $173,838.99 as of March 1, 2024, applying interest at 12.5% per annum from January 2023, conceded that he had previously "over promised and under delivered," and promised payment of the balance so acknowledged. On or about the same date Defendant caused the sum of $5,500 to be wired to Plaintiff from an account in the name of Tiny Capital, LLC on account of the balance so acknowledged, and thereafter proposed a schedule of further payments in May, July and November of 2024, none of which was made.

43. On or about May 1, 2024, Defendant further acknowledged in writing that the Equity Interest had never been documented and that it derived from his own membership interest,

stating: "my equity is papered, and that's where yours comes from … But needs to be memorialized like now." On or about May 6, 2024 he advised that the grant would be papered that month and that the goal was for Plaintiff to be "directly on the cap table," and on or about May 26, 2024 he stated that the documents would be "done this week." No documentation of the Equity Interest was ever delivered.

44. Unfortunately, Plaintiff has since discovered that the representations of existing fact made by Defendant himself and on behalf of Defendant Company concerning the financial condition of Defendant Company and the sources from which the loan was to be repaid, and the nature and transferability of the equity of Defendant in Defendant Company – including that Defendant Company was "over-allocated" on its capital raise and that the committed investor funding from which the loan was to be repaid within thirty days was merely awaiting final closes, and that Defendant then held an unrestricted personal stake of not less than 25% of Defendant Company which he was authorized under all existing agreements to grant and pledge to Plaintiff – were false when made, known to Defendant to be false, and made with the intent and effect of, *inter alia*, inducing Plaintiff to enter into and continue under the Transaction against his interests. Defendant Company and its other members now take the position that the operating agreement of Defendant Company restricted any transfer or pledge by Defendant of interests in his equity. Plaintiff disputes that position as against him; but if it is correct, then Defendant – who, as managing partner of Defendant Company, knew of those restrictions – had no ability to grant, pledge or deliver the Equity Interest and the security interest when he represented that he could, and his representations of an unrestricted and transferable stake were false when made.

45. On March 14, 2024 – the day after Defendant transmitted his written computation of the balance due and caused the $5,500 payment described above to be wired to Plaintiff – a news report was published in The New York Times, followed by a report in Eater on March 15,

2024, accusing Defendant of financial wrongdoing in connection with the Defendant Business and his other ventures that included "serial scamming" of investors, lenders and creditors under circumstances substantially similar to those experienced by Plaintiff in this Transaction.

46. The full nature and extent of the wrongdoing of Defendants with respect to Plaintiff and the Transaction – including that Defendant had borrowed from other lenders on substantially similar terms and had transferred and pledged interests in his equity in Defendant Company to others, and that Defendant Company and its other members would later dispute the transfers and pledges made by Defendant, a position Plaintiff rejects – were unknown to Plaintiff, and could not have been discovered by him through reasonable diligence, before the March 2024 reporting described above, and were not disclosed in full until the litigation commenced against Defendant by Defendant Company and its other members in November of 2025, as detailed below.

47. For example, in or about February of 2024, an individual named June Kwan commenced two actions in the Supreme Court of the State of New York, New York County: one against Defendant, Defendant Company and Operating Company (Index No. 650535/2024) seeking to enforce a membership interest in Defendant Company and Operating Company that she claimed to have acquired from Defendant in exchange for loans she had made to him, and one against Defendant (Index No. 650741/2024) seeking to enforce a promissory note made by Defendant in her favor – interests granted and pledged by Defendant in addition to those granted and pledged to Plaintiff under the Transaction.

48. For example, on November 13, 2025, Defendant Company, Operating Company and their managing members, Brooks Headley and Sheryl Heefner, commenced an action against Defendant and Kwan in the Supreme Court of the State of New York, New York County (Index No. 164838/2025), alleging extensive financial wrongdoing by Defendant himself and through Defendant Company and, relevant here, alleging that Defendant obtained his membership interest

in Defendant Company on or about August 3, 2021, that he thereafter made "multiple unauthorized transfers of his membership interest to at least three separate parties in exchange for personal loans," that such transfers and pledges were made without the knowledge, consent or authorization of Defendant Company or its other members, and that Defendant was removed as a member and manager of Defendant Company and Operating Company on or about June 27, 2024. Upon information and belief, based upon the terms of the Transaction and the timing of the transfers so alleged, Plaintiff is one of the parties to whom that pleading refers.

49. In or about February and March of 2024, Plaintiff communicated directly with Ms. Kwan regarding her dealings with Defendant and Defendant Company. Kwan described having made bridge loans to Defendant, as the purported managing partner of Defendant Company, on terms substantially similar to those of the Transaction, which Defendant had likewise failed to repay, and described a repayment arrangement reached with Defendant and Defendant Company following the March 2024 reporting. According to the November 2025 pleading of Defendant Company, Defendant Company thereafter made payments to Kwan on account of the loans she had made to Defendant.

50. The November 2025 action commenced by Defendant Company, Operating Company and their managing members thus takes the position that the transfers and pledges by Defendant of interests in his equity in Defendant Company to the parties who lent him money – including, upon information and belief, Plaintiff – were unauthorized, made without the knowledge or consent of Defendant Company or its other members, and made in violation of the transfer restrictions contained in the operating agreement of Defendant Company, and that Defendant had been defrauding those lenders to enrich himself. Plaintiff disputes that position insofar as it is directed at the interests granted and pledged to him. Plaintiff has communicated directly with Ms. Heefner and with counsel for Defendant Company regarding his claims, and Defendant Company

and Operating Company are aware of them.

51. Further, other claims filed against Defendant and reported in the news revealed that Defendant had, before and after the Transaction, borrowed from multiple other lenders on substantially similar terms without repaying them, and that the representations made to Plaintiff concerning the investor funding from which the loan was to be repaid were false and at all times known to be false.

52. As a direct and foreseeable result of this deception by Defendant himself and on behalf of Defendant Company, Plaintiff has been severely damaged and prevented from taking actions to protect his interests to his severe and ongoing detriment.

53. Between 2022 and 2024, Defendant – acting for himself and on behalf of Defendant Company – repeatedly acknowledged in writing the continuing validity of the obligations owed to Plaintiff under the Transaction and promised their satisfaction, including, *inter alia*: (i) the dated written payment promises of June 29, July 5 and July 8, 2022 detailed above; (ii) the written agreement in 2023 and 2024 to the accrual of interest on the Principal Amount at 12.5% per annum from January 20, 2023; (iii) the written computation and acknowledgment of March 13, 2024 fixing the balance due to Plaintiff at $173,838.99 as of March 1, 2024, together with the partial payment of $5,500 made on or about that date on account of the balance so acknowledged; and (iv) the written acknowledgments of May 1, May 6 and May 26, 2024 regarding the Equity Interest – each of which constitutes a written acknowledgment of the obligations of Defendants and a promise to satisfy them, renewing such obligations and the time within which to enforce them under applicable law, including New York General Obligations Law § 17-101 and Texas Civil Practice and Remedies Code § 16.065, such that the claims asserted in this Action are timely.

54. Further, as detailed above, these representations, payment promises and acknowledgments by Defendant himself and on behalf of Defendant Company were made with

the intent and effect of inducing Plaintiff to forbear from commencing suit against Defendants and from exercising his default remedies under the Transaction, and Plaintiff reasonably relied thereon in so forbearing. By reason of this conduct, including the affirmative concealment by Defendants of the true facts detailed above, Defendants are equitably estopped from asserting any defense based upon the passage of time, and the running of any applicable limitations period was tolled during the period of such inducement and concealment.

**FIRST COUNT**
**Breach of Contract**
**(Defendants)**

55. Plaintiff realleges each of the foregoing paragraphs of the Complaint.

56. As detailed above, Plaintiff entered into the Transaction with Defendants as memorialized in documents including the Loan Agreement and the Promissory Note and later modified under the Modification to increase the Equity Interest to 1.5%, and by the subsequent written agreement of the parties to increase the rate of interest accruing on the Principal Amount to 12.5% *per annum* from January 20, 2023.

57. As detailed above, Plaintiff performed under the Transaction and delivered the Loan Amount to Defendants.

58. As detailed above, Defendants breached the terms of the Transaction in numerous respects despite due demand and notice of default by Plaintiff with defaults including, *inter alia*, failing to pay the Principal Amount or applicable interest, failing to deliver the Equity Interest to Plaintiff, failing to deliver capitalization tables and other documentation of the Equity Interest as required under the Loan Documents, transferring the equity interest of Defendant in the Defendant Company to others in violation of the security interest held by Plaintiff, and in other respects.

59. As detailed above, Defendant repeatedly acknowledged the obligations of Defendants under the Transaction in writing – including the written computation of March 13,

2024 acknowledging a balance due of $173,838.99 as of March 1, 2024 – and made a partial payment on account of the balance so acknowledged, renewing the obligations of Defendants and the time within which to enforce them, such that the claims asserted in this Count are timely.

60. As a direct and proximate result of the misconduct of Defendants, Plaintiff has been damaged.

61. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial but not less than $173,838.99, the balance Defendant himself calculated and acknowledged as of March 1, 2024, together with interest accruing thereafter, and applicable fees and costs including reasonable attorneys' fees.

**SECOND COUNT**
**Fraud**
**(Defendants)**

62. Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

63. As detailed above, during all relevant periods, Defendant acting himself and on behalf of Defendant Company induced Plaintiff to enter into the Transaction and deliver the Loan Amount for the benefit of Defendant and Defendant Company.

64. As detailed above, during all relevant periods, Defendant himself and on behalf of Defendant Company induced Plaintiff to enter into the Transaction based on various misrepresentations of then-present fact concerning the financial condition of Defendant Company and the sources from which the loan was to be repaid, and the nature and transferability of the equity of Defendant in Defendant Company, including, inter alia, that Defendant Company was "over-allocated" on its capital raise and that the committed investor funding from which the loan was to be repaid was merely awaiting final closes, and that Defendant then held an unrestricted personal stake of not less than 25% of Defendant Company, owned by him "directly and solely," which he was authorized under all existing agreements to grant and pledge to Plaintiff – which, if

the transfer restrictions upon which Defendant Company and its other members now rely are enforceable as against Plaintiff, he had no ability to do.

65. In addition, as detailed above, Defendant himself and on behalf of Defendant Company also induced Plaintiff to continue under the Transaction and to forbear from taking remedial action based upon further misrepresentations of then-present fact concerning the status of Defendant Company and the causes of the delays in performance, including, *inter alia*: (i) that the delay in repayment was caused solely by the slower-than-promised close of a committed Los Angeles investor, when in fact no such committed investor funding existed; (ii) the representation of March 20, 2022, supported by a screenshot of the Bank of America account of Operating Company reflecting $620,581.71, that the Defendant Business then held cash on hand available to Defendant, as its manager, to fund the repayment of Plaintiff, when in fact Defendant had transferred and pledged interests in his equity to other lenders on substantially similar terms and – on the position now taken by Defendant Company and its other members – had no authority to apply the funds of the Defendant Business to the obligations he had incurred; and (iii) the concealment, throughout the same period, of the competing claims of those other lenders and of the transfer restrictions upon which Defendant Company and its other members now rely.

66. As detailed above, Plaintiff reasonably relied upon these statements made by Defendant himself and on behalf of Defendant Company in entering into the Transaction and later in forbearing upon taking remedial actions against Defendants – to his severe detriment.

67. Additionally, Plaintiff was further damaged by the fraudulent concealment of facts critical to the transaction by Defendant himself and on behalf of Defendant Company such as the existence of extensive claims against them by third parties, including other lenders to whom Defendant had transferred and pledged interests in his equity in Defendant Company, and the

transfer restrictions contained in the operating agreement of Defendant Company upon which Defendant Company and its other members now rely.

68. Under New York law, Defendants had an affirmative duty to disclose these facts under the special-facts doctrine because, *inter alia*: (i) Defendants possessed a position of superior knowledge with respect to the facts and in fact exclusive knowledge; (ii) the facts were essential to the transactions between the parties, within the particular knowledge of Defendants, and unknowable by Plaintiff by any required inquiry; and (iii) Defendants knew that Plaintiff would have acted differently had they known the true facts related to the transaction between the parties such that their nondisclosure rendered their transactions inherently unfair.

69. As detailed above, Defendant himself and on behalf of Defendant Company made these misrepresentations and omissions to Plaintiff with knowledge of their falsity and the materiality of the subject facts, and with the intent and effect of deceiving Plaintiff and inducing Plaintiff to take actions against his interests and to his severe detriment.

70. Plaintiff justifiably relied upon these misrepresentations and omissions.

71. As Defendants knew, Plaintiff would never have entered into the aforementioned transactions nor avoided taking remedial actions against Defendants if Plaintiff had known the true facts surrounding the subject transactions between the parties during these periods.

72. Further, punitive damages should be awarded in favor of Plaintiff and against Defendants as the fraudulent activities of Defendant himself and through Defendant Company, *inter alia*, demonstrate a high degree of moral culpability insofar as they were intentional, repeated multiple times against multiple victims, and accompanied by ongoing wrongful actions by Defendants to conceal their wrongdoing from Plaintiff.

73. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, plus interest as well as the costs and fees associated with the Action, including reasonable attorneys' fees and applicable punitive damages.

## THIRD COUNT
**Declaratory Relief**
**(Defendants, Operating Company and Doe Defendants)**

74. Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

75. As detailed above, under the Transaction and Loan Documents, Plaintiff was granted interests in the equity of Defendant in Defendant Company including the Equity Interest of 1.25% (increased to 1.5% under the Modification), together with a security interest in all equity of Defendant in the Defendant Company to secure the payment of obligations to Plaintiff under the Transaction.

76. As detailed above, Defendants have failed to deliver the Equity Interest and otherwise defaulted under the Transaction entitling Plaintiff to pursue payment from the equity held by Defendant in Defendant Company.

77. As detailed above, a justiciable controversy exists as to the rights of Plaintiff to the Equity Interest and the equity as security.

78. As detailed above, Defendant Company, Operating Company and their managing members, and other claimed operators and interest holders in Defendant Company, assert that Defendant had no authority to act on behalf of Defendant Company during any relevant period, grant any interest in equity to Plaintiff, and/or transfer any interest in his own equity in Defendant Company to Plaintiff.

79. Plaintiff seeks judgment declaring that: (i) during all relevant periods, Defendant possessed authority to act on behalf of Defendant Company in connection with the Transaction with Plaintiff and/or possessed the requisite apparent authority under New York law such that the

interests in the Defendant Company transferred to Plaintiff were validly transferred and possessed by Plaintiff; (ii) Plaintiff owns an Equity Interest of 1.5% in Defendant Company by virtue of the Transaction as modified by the Modification; (iii) Plaintiff holds a valid and enforceable security interest in the remaining equity of Defendant in Defendant Company; (iv) Plaintiff has immediate rights to recovery and sale of such equity to pay the obligations being pursued in this action; (v) any purported transfer, pledge or encumbrance of the equity of Defendant in Defendant Company to or in favor of any of Defendants, Operating Company or the Doe Defendants is subject and subordinate to the rights of Plaintiff under the Transaction and the Loan Documents; and (vi) the Equity Interest and the security interest of Plaintiff are binding upon Defendant Company and Operating Company.

80. Further, and in order to give effect to the declaratory relief sought and to identify both the equity in which Plaintiff holds an interest and the transferees among whom that equity has been divided, Plaintiff seeks an order directing Defendants, Operating Company and the Doe Defendants to produce and disclose the current capitalization of Defendant Company and Operating Company, including their capitalization tables, membership ledgers, and records of all transfers, pledges and encumbrances of membership interests, together with the financial records reflecting the application of the funds delivered by Plaintiff under the Transaction.

**FOURTH COUNT**
**Unjust Enrichment**
**(Defendants, Operating Company and Doe Defendants)**

81. Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

82. As detailed above, Defendant himself and on behalf of Defendant Company caused Plaintiff to provide $175,000 to them in connection with the scheme referenced above.

83. Upon information and belief, the funds that Plaintiff delivered to Defendants were in fact utilized, in whole or in part, by and for the benefit of Defendant Company and Operating

Company, including the improvement of the NY Location at which Operating Company continues to operate the Defendant Business.

84. As reflected in the November 2025 pleading described above, Defendant Company, Operating Company and their managing members have disclaimed any valid action by Defendant on behalf or for the benefit of Defendant Company and dispute the validity of the Transaction with Plaintiff, while retaining the benefit of the funds delivered by Plaintiff under it.

85. In the alternative, and to the extent the Transaction is determined not to constitute a valid and enforceable agreement binding upon any of them, it is against equity and good conscience to permit Defendants, Operating Company and their other transferees which received the benefit of the funds provided by Plaintiff under the Transaction to be unjustly enriched by the funds delivered by Plaintiff.

86. By reason of the foregoing, Defendants, Operating Company and other to-be-named transferees and beneficiaries defined as Doe Defendants are liable to Plaintiff in an amount to be determined at trial, with applicable interest as well as applicable costs and fees associated with the Action.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Plaintiff respectfully requests that this Court enter an order granting judgment in favor of Plaintiff and against Defendants, Operating Company and the Doe Defendants, as applicable to each, including the following relief: (i) monetary damages in an amount to be determined at trial but not less than $173,838.99; (ii) applicable interest and costs associated with this Action including reasonable attorneys' fees in an amount to be determined at trial; (iii) the declaratory relief described above; (iv) an order directing Defendants, Operating Company and the Doe Defendants to produce and disclose the current capitalization of Defendant Company and Operating Company, including their capitalization tables, membership ledgers, and records of all transfers, pledges and encumbrances of membership interests, together with the financial records reflecting the application of the funds delivered by Plaintiff under the Transaction; and (v) such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 6, 2026

**MCCUE SUSSMANE ZAPFEL & COHEN P.C.**

By: ______________________________

Scott L. Swanson
420 Lexington Avenue, Suite 2250
New York, New York 10170
212-931-5500
sswanson@mszpc.com
*Counsel for Plaintiff*